# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JAMES ELLIS and DARRYL ELLIS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NATIONSTAR MORTGAGE LLC d/b/a MR COOPER, <br><br> Defendant. | Case No.: 19-cv-661 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (the "EFTA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and common law principles of contract law.

## JURISDICTION AND VENUE

2. The court has subject matter jurisdiction to grant the relief sought by the Plaintiff pursuant to 12 U.S.C. § 2614, 15 U.S.C. § 1693m, and 28 U.S.C. §§ 1331, 1337, and 1367. The court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1331(d) because this is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000.00 in the aggregate.

3. Venue in this District is proper in that Defendant directed its conduct into the District.

## PARTIES

4. Plaintiffs James Ellis and Darryl Ellis are a married couple who reside together in the Eastern District of Wisconsin (Milwaukee County).

5. Each plaintiff is a "consumer" as defined in the EFTA, 15 U.S.C. § 1693a(6), in that each plaintiff is a natural person.

6. Each plaintiff is also a "sender" as defined in Regulation E, 12 C.F.R. § 1005.30(g), in that each plaintiff is a consumer who requested a remittance transfer provider to send a remittance transfer to a designated recipient.

7. Each plaintiff is also a "borrower" as used in RESPA, 12 U.S.C. § 2605, in that Defendant is authorized to engage or purports to be authorized to engage in the servicing of Plaintiff's federally related mortgage loan.

8. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") is a foreign limited liability company with its principal offices located at 8950 Cypress Waters Boulevard, Dallas, Texas 75019.

9. Nationstar does business under the fictitious or trade name "Mr. Cooper."

10. Nationstar is one of the largest mortgage servicers in the United States. *See, e.g.,* https://www.housingwire.com/articles/42231-big-banks-release-their-hold-on-mortgage-servicing-industry (accessed April 24, 2019) ("The largest non-bank servicer, Nationstar Mortgage, which now does business as Mr. Cooper, continued its acquisition activity through the year, growing 7.6% over the year, according to Fitch's report.")

11. Nationstar is a designated payee as used in the EFTA, 15 U.S.C. § 1693e(b), in that Nationstar initiated and received electronic fund transfers from Plaintiffs' account that were preauthorized or purportedly preauthorized.

2

12. Nationstar is also a "servicer" as that term is used in RESPA, 12 U.S.C. § 2605, in that Nationstar was responsible for servicing a federally related mortgage loan.

## FACTS

13. On or about August 26, 2016, Plaintiffs "closed" on the purchase of their home at 6200 West Pierner Place, Brown Deer, Wisconsin 53223. The loan was a Federal Housing Administration ("FHA") insured loan.

14. Shortly after closing, the servicing rights for Plaintiffs' mortgage loan were transferred to Pacific Union Financial, LLC ("PUF").

15. Shortly after the servicing rights for the Plaintiffs' mortgage loan were transferred to PUF, Plaintiffs requested that PUF set up budget bi-weekly drafting in a manner consistent with their income.

16. On November 10, 2016, PUF mailed Plaintiffs a letter to inform them that their request for "Budget bi-weekly drafting" has been processed. A copy of this letter is attached to this complaint as Exhibit A.

17. Exhibit A states:

Dear James W Ellis and Darryl Darvi Ellis :

Your request to set up Budget bi-weekly drafting for your mortgage loan has been processed. Please review the information below for accuracy and contact us immediately if changes or corrections are necessary.

| | |
|---|---|
| Mortgage Loan Number | ▮▮▮▮▮▮6239 |
| Current Monthly Payment Amount | $ 1,420.79 |
| Beginning Draft Date | 11-11-2016 |

In order for the Budget biweekly drafting to begin, your mortgage loan must be due for December 2016 prior to the initial draft date.

One-half of your regular monthly payment will draft on 11-11-2016 and every 14-days thereafter. Drafting must begin at least 21-days prior to the next payment due date. We will only draft your account provided your loan is paid one month ahead.

3

18. Consistent with this "Budget bi-weekly drafting" authorization, PUF received electronic funds transfers from Plaintiffs' Chase Total Checking account ending in 2973 every 14 days.

19. The "Budget bi-weekly drafting" authorized PUF to withdraw money electronically from Plaintiffs' checking account at Chase Bank at regular intervals. It is an "electronic fund transfer" pursuant to 15 U.S.C. § 1693a(7) and a "preauthorized electronic fund transfer" pursuant to 15 U.S.C. § 1693a(10).

20. Each payment was in the amount of one half of Plaintiffs' monthly mortgage payment, and payments occurred every other Friday. For example, PUF received electronic funds transfers in the amount of $712.56 on December 21, 2018 and January 4, 2018. A copy of the account statement for Plaintiffs' Chase Total Checking account covering the period between December 15, 2018 and January 15, 2019, which reflects these December 21, 2018 and January 4, 2018 transfers, is attached to this complaint as Exhibit B.

21. The payments scheduled for January 18, 2019 and February 1, 2019 were also made as expected through the preauthorized electronic funds transfer.

22. On or about February 8, 2019, Defendant mailed a "Re: Transfer of Servicing of your mortgage from Pacific Union Financial, LLC" letter to Plaintiffs, informing them of the "great news" that "[t]he servicing of your mortgage with Pacific Union Financial, LLC … has been transferred to Mr. Cooper." A copy of this letter is attached to this complaint as Exhibit C.

23. As Plaintiffs had made a payment on February 1, 2019, the next scheduled payment, which would have been the first payment after servicing rights were transferred to Mr. Cooper, was scheduled for February 15, 2019.

4

24. Plaintiffs did not execute a modification or agree to modify the terms of the existing "Budget bi-weekly drafting" authorization agreement that they had entered with PUF, and pursuant to which PUF had been making electronic funds transfers for more than two years.

25. Indeed, upon information and belief, Plaintiffs' mortgage servicing rights were "transferred" from PUF to Defendant through Defendant's purchase and acquisition of PUF outright. https://www.housingwire.com/articles/48097-mr-cooper-acquires-pacific-union-financial (accessed: April 24, 2019).

26. Plaintiffs first learned that servicing rights had been transferred from PUF to Defendant when they received the February 8, 2019 "Re: Transfer of Servicing" letter.

27. Upon information and belief, neither PUF nor Defendant mailed Plaintiffs notice that the servicing rights for the mortgage would be transferred prior to the transfer of those servicing rights from PUF to Defendant.

28. When Plaintiffs' mortgage was transferred, the account number changed from the PUF Account Number ending in 6239 to a Mr. Cooper Loan Number ending in 2322.

29. Plaintiffs had no opportunity to contact Defendant prior to servicing to discuss the "Budget bi-weekly drafting" authorization agreement that Plaintiffs had entered with PUF and ensure that Defendant would honor that agreement would not make any mistakes in automatic withdrawals.

30. Plaintiffs had no opportunity to contact their depository financial institution from which the "Budget bi-weekly drafting" was made to ensure that this institution was aware that Plaintiffs' prior agreement with PUF was still effective, and the amount and timing of each withdrawal was not supposed to change.

31. Notwithstanding that Plaintiffs did not execute a modification or agree to modify the terms of the existing "Budget bi-weekly drafting" authorization agreement and that Plaintiffs' payment was scheduled for Friday, February 15, 2019, Defendant initiated an unauthorized electronic funds transfer from Plaintiffs' checking account on Monday, February 11, 2019.

32. The unauthorized February 11, 2019 withdrawal caused Plaintiffs' checking account to be overdrawn, incurring a $34.00 overdraft fee.

33. James Ellis contacted Defendant through its "Secure Message Center" on February 11, 2019 to inform Defendant that this was "a big mistake" that had caused a $712.54 overdraft because the existing arrangement with PUF was for automated payments "every other week on Friday," and to ask why the funds transfer was initiated several days early. Defendant responded to this contact by informing Plaintiffs that it would correct the problem and issued Plaintiffs a $34.00 remittance to cover the $34.00 fee that Chase Bank imposed as a result of the overdraft. A copy of the "Secure Message Center" inquiry and response is attached to this complaint as <u>Exhibit D</u>.

34. On or about February 13, 2019, Defendant mailed a "Notice of Servicing Transfer" letter to Plaintiffs. A copy of this letter is attached to this complaint as <u>Exhibit E</u>.

35. <u>Exhibit E</u> contains the following:

> **NOTICE OF SERVICING TRANSFER**
>
> Dear JAMES W ELLIS and DARRYL DARVI ELLIS,
>
> The servicing of your mortgage loan is being transferred, effective 02/04/19. **This means that after this date, a new** servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage **loan will change**.

<u>Exhibit E</u>.

36. <u>Exhibit E</u> informed Plaintiffs that, after February 4, 2019, "a new servicer will be collecting your mortgage loan payments from you" and that "[n]othing else about your mortgage loan will change."

37. On or about February 19, 2019, Defendant mailed Plaintiffs a check in the amount of $34.00 to cover the overdraft fee Plaintiffs incurred as a result of the unauthorized transfer Defendant initiated on February 11, 2019. A copy of the February 19, 2019 Remittance Advice slip attached to the check is attached to this complaint as <u>Exhibit F</u>.

38. Notwithstanding Defendant's assurances that it would correct the problem and initiate the bi-weekly electronic funds transfers every other Friday pursuant to Plaintiffs existing agreement with PUF, Defendant did not correct the problem.

39. On March 18, 2019, Defendant initiated the transfer for the payment scheduled for March 15, 2019.

40. On April 1, 2019, Defendant initiated the transfer for the payment scheduled for March 29, 2019.

41. Neither the March 18, 2019 nor April 1, 2019 payments directly resulted in an overdraft.

42. However, on April 2, 2019, the day after Defendant initiated the transfer for the payment scheduled for March 29, 2019, Defendant initiated another unauthorized electronic funds transfer, this time in the amount of $1,469.77.

43. Upon information and belief, the April 2, 2019 transfer amount, $1,469.77, was one full month's mortgage payment. Defendant had no authorization or basis for initiating this transfer, and had no authorization or basis for initiating any transfers, electronic or otherwise, in the amount of $1,469.77.

7

44. The unauthorized electronic funds transfer on April 2, 2019 caused a ripple effect whereby Plaintiffs incurred at least three overdraft fees, each in the amount of $34.00.

45. Further, when Plaintiffs informed Defendant that the April 2, 2019 transfer was unauthorized and had caused Plaintiffs to incur at least three overdraft fees, Defendant refunded just $770.00, essentially the amount of *half* of the unauthorized transfer, plus one $34.00 overdraft fee.

46. However, Defendant should never have made the transfer, and should have refunded all, rather than half, of the unauthorized transfer because Defendant had just receipted the payment scheduled for March 29, 2019, and thus had no basis for initiating a transfer in *any amount* on April 2, 2019.

### *The EFTA*

47. The purpose of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

48. "Electronic funds transfer" is defined as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1692a(7).

49. A "preauthorized electronic fund transfer" is defined as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

50. 15 U.S.C. § 1693e(b) provides that "in the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or

8

designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer."

### *RESPA*

51. Congress passed the Real Estate Settlement Procedures Act ("RESPA") in 1974 to protect homeowners by assisting them in becoming better educated while shopping for real estate services, and eliminating kickbacks and referral fees, which add unnecessary costs to settlement services.

52. RESPA requires lenders and others involved in mortgage lending to provide borrowers with pertinent and timely disclosures regarding the nature and costs of a real estate settlement process.

53. Congress has also authorized the Consumer Financial Protection Bureau ("CFPB") to promulgate RESPA's implementing rules and regulations, including the rules codified in 12 C.F.R. § 1024 ("Regulation X").

54. Congress has authorized a private right of action for violations of RESPA, including violations of Regulation X. 12 U.S.C. §§ 2605(f); 2605(k)(E); 2614.

55. 12 U.S.C. § 2605(k)(C) states that a servicer of a federally related mortgage shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

56. 12 C.F.R. § 1024.33 states:

    (b) Notices of transfer of loan servicing

9

(1) Requirement for notice. Except as provided in paragraph (b)(2) of this section, each transferor servicer and transferee servicer of any mortgage loan shall provide to the borrower a notice of transfer for any assignment, sale, or transfer of the servicing of the mortgage loan. The notice must contain the information described in paragraph (b)(4) of this section. Appendix MS-2 of this part contains a model form for the disclosures required under this paragraph (b).

(2) Certain transfers excluded.

(i) The following transfers are not assignments, sales, or transfers of mortgage loan servicing for purposes of this section if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:

. . .

(3) Time of notice

(i) In general. Except as provided in paragraphs (b)(3)(ii) and (iii) of this section, the transferor servicer shall provide the notice of transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan. The transferee servicer shall provide the notice of transfer to the borrower not more than 15 days after the effective date of the transfer. The transferor and transferee servicers may provide a single notice, in which case the notice shall be provided not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan.

## COUNT I – EFTA

57. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. The electronic funds transfer authorization that Plaintiffs entered with PUF authorized the servicer of Plaintiffs' mortgage loan to initiate electronic funds transfers on a bi-weekly basis every other Friday, and in the amount of half of the monthly mortgage payment.

59. 15 U.S.C. § 1693e(b) provides that, "in the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or

designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Bureau, of the amount to be transferred and the scheduled date of the transfer."

60. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2019 that were not consistent with the electronic funds authorization that Plaintiffs entered with PUF.

61. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2109 without providing reasonable advance notice to Plaintiffs of the amount to be transferred and the scheduled date of the transfer.

62. As a result of these unauthorized transfers, Plaintiffs suffered damages including but not limited to overdraft fees and emotional distress from their checking account being overdrawn and having to demand Defendant correct its errors.

63. Defendant violated 15 U.S.C. §§ 1693e(b).

## COUNT II – RESPA

64. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. The electronic funds transfer authorization that Plaintiffs entered with PUF authorized the servicer of Plaintiffs' mortgage loan to initiate electronic funds transfers on a bi-weekly basis every other Friday, and in the amount of half of the monthly mortgage payment.

66. 12 U.S.C. § 2605(k)(1)(C) states that a servicer of a federally related mortgage shall not "fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

11

67. Plaintiffs requested that Defendant correct its erroneous withdrawals. <u>Exhibit D</u>.

68. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2019 that were not consistent with the electronic funds authorization that Plaintiffs entered with PUF.

69. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2109 without providing reasonable advance notice to Plaintiffs of the amount to be transferred and the scheduled date of the transfer.

70. Defendant did not timely refund Plaintiffs for the unauthorized April 2, 2019 transfer or compensate Plaintiffs for the consequential damages arising from that unauthorized transfer.

71. Obtaining authorization to initiate electronic funds transfers and properly allocating payments are standard servicer's duties.

72. Defendant violated 12 U.S.C. §§ 2605(k)(C).

## **COUNT III -- RESPA**

73. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. When PUF transferred the servicing rights for Plaintiffs' mortgage to Defendant, Defendant changed or purported to change the mortgage's payee, account number, and amount of payment due.

75. PUF had a duty to provide Plaintiffs with a Notice of Transfer of Loan Servicing no less than fifteen days prior to the effective date of the transfer of servicing rights.

76. Neither Defendant nor PUF provided Plaintiffs with a Notice of Transfer of Loan Servicing at least fifteen days before the effective date of the transfer of servicing rights from PUF to Defendant.

77. PUF merged into Plaintiff when Defendant purchased PUF outright and acquired all of PUF's assets, and Defendant is PUF's successor.

78. Plaintiffs have suffered undue harm because of PUF and Defendant's failure to provide a Notice of Transfer of Loan Servicing prior to the effective date of the transfer, which has resulted in repeated improper and unauthorized electronic funds transfers.

79. Defendant violated 12 U.S.C. § 2605(k)(E) and 12 C.F.R. § 1024.33(b).

## COUNT IV – Breach of Contract

80. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Plaintiffs and PUF executed an electronic funds transfer authorization agreement.

82. Defendant purchased and acquired all of PUF's assets, including the right to service Plaintiffs' mortgage.

83. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2019 that were not consistent with the electronic funds authorization that Plaintiffs entered with PUF.

84. Defendant initiated electronic funds transfers on February 11, 2019 and April 2, 2109 without providing reasonable advance notice to Plaintiffs of the amount to be transferred and the scheduled date of the transfer.

85. Defendant did not timely refund Plaintiffs for the unauthorized April 2, 2019 transfer or compensate Plaintiffs for the consequential damages arising from that unauthorized transfer.

86. Obtaining authorization to initiate electronic funds transfers and properly allocating payments are standard servicer's duties.

87. Defendant did not honor Plaintiffs' electronic funds transfer authorization agreement.

88. Plaintiffs suffered damages as a result of the breach.

## COUNT V – Unjust Enrichment

89. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. Defendants acted unlawfully, unfairly, and deceptively.

91. As a result of Defendants' unlawful, unfair, and deceptive conduct, Plaintiffs paid unauthorized amounts, and made premature payments.

92. Defendants obtained a benefit as a result of their unlawful, unfair, and deceptive conduct in the form of the unauthorized and premature payments.

93. Under principles of equity and good conscience, Defendants should not be permitted to retain revenue that it acquired by virtue of its unlawful conduct. All funds, revenue, and benefits received by Defendant rightfully belong to Plaintiff and those similarly situated.

## CLASS ALLEGATIONS

94. Plaintiff brings this action on behalf of four Classes.

95. Class I ("Nationwide Notice of Transfer Letter Class") consists of:

(a) all natural persons in the United States of America, (b) whose mortgage loan servicing rights were transferred from PUF to Defendant, (c) and to whom neither PUF nor Defendant mailed a "Notice of Transfer of Servicing Rights" letter at least fifteen (15) days prior to the effective date of the transfer.

96. Class II ("Wisconsin Notice of Transfer Letter Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) whose mortgage loan servicing rights were transferred from PUF to Defendant, (c) and to whom neither PUF nor Defendant mailed a "Notice of Transfer of Servicing Rights" letter at least fifteen (15) days prior to the effective date of the transfer.

97. Class III ("Nationwide Unauthorized Funds Transfer Class") consists of:

(a) all natural persons in the United States of America, (b) whose mortgage loan servicing rights were transferred to Defendant (c) and who had executed an electronic funds transfer authorization with their prior servicer (d) and from whom Defendant initiated electronic funds transfers that were inconsistent with the prior existing electronic funds transfer authorization executed with the prior servicer.

98. Class IV ("Wisconsin Unauthorized Funds Transfer Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) (b) whose mortgage loan servicing rights were transferred to Defendant (c) and who had executed an electronic funds transfer authorization with their prior servicer (d) and from whom Defendant initiated electronic funds transfers that were inconsistent with the prior existing electronic funds transfer authorization executed with the prior servicer.

99. The "Class Period" for Class I dates back to the longest applicable statute of limitations for any claims asserted on behalf of Class I from the date this action was commenced and continues through the date this action was commenced.

100. The "Class Period" for Class II dates back to the longest applicable statute of limitations for any claims asserted on behalf of Class II from the date this action was commenced and continues through the date this action was commenced.

15

101. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

102. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendant complied with the EFTA, RESPA, and state contract law.

103. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

104. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

105. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

106. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: May 6 2019

                                              **ADEMI & O'REILLY, LLP**

By:   /s/ John D. Blythin
       Shpetim Ademi (SBN 1026973)
       John D. Blythin (SBN 1046105)
       Mark A. Eldridge (SBN 1089944)
       Jesse Fruchter (SBN 1097673)
       3620 East Layton Avenue
       Cudahy, WI 53110
       (414) 482-8000
       (414) 482-8001 (fax)
       sademi@ademilaw.com
       jblythin@ademilaw.com
       meldridge@ademilaw.com
       jfruchter@ademilaw.com